# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Chavez and Maria Elena Chavez, | No. CV 01-00245-TUC-FRZ(JM) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION ON MOTION FOR JUDGMENT ON THE PLEADINGS** |
| United States of America, et. al, | |
| Defendants. | |

Pending before the Court is Motion for Judgment on the Pleadings [Doc. 143] filed by Defendants James Ziglar, David Aguilar, Ralph Hunt, Alvaro Obregon, Felix Chavez, and Michael Campbell (the "Individual Supervisory Defendants" when referred to collectively). For the reasons explained below, the Magistrate Judge recommends that the District Court, after independent review of the record, deny Defendants' motion.

## I.     Relevant Background

In the amended complaint ("FAC"), Plaintiffs Jose and Maria Chavez ("the Chavezes" or "Plaintiffs"), who are of Hispanic descent, allege that they own and operate a small shuttle service, known as "Chavez Shuttle." FAC ¶ 6. The Chavez Shuttle began operations in the Fall of 1995 and shuttled customers between Sasabe and Tucson, Arizona. FAC ¶¶ 9-12. Plaintiffs allege that since its inception, the shuttle van has been stopped by roving Border Patrol agents on almost a daily basis. FAC ¶ 29. Plaintiffs describe a typical stop being initiated by agents activating their emergency lights, pulling the van over and opening the doors without the consent of the driver. FAC ¶ 30. The agents, before identifying themselves or presenting identification, then question the shuttle's passengers, a process that

can last from 5 to 30 minutes. *Id.* As is relevant to the instant motion, Plaintiffs contend that the actions of the Border Patrol and its agents violate the Fourth Amendment and entitle them to damages and injunctive relief. FAC ¶¶ 139-146.

Plaintiffs allege that the Individual Supervisory Defendants "personally reviewed and, thus, knowing ordered, directed, sanctioned or permitted the roving patrol activities and operations (as set forth in paragraphs 88 et seq.) conducted by Border Patrol agents as set forth in paragraphs herein." FAC ¶ 26. As to Defendant Aguilar, Plaintiffs contend that he "has acquired knowledge of the aforesaid roving patrol activities and operations, and has deliberately sanctioned or permitted their continuation in substantially the form and for the purposes disclosed to him."

In its Memorandum decision issued March 27, 2007, the Ninth Circuit reversed the dismissal of the claims against the Individual Supervisory Defendants, reasoning as follows:

> [T]he Chavezes assert claims against Agents Hunt, Obregon, Chavez, Ziglar, Aguilar, and Campbell, alleging that they violated the Chavezes' constitutional rights in their role as supervisors. "[A] supervisor is liable for the constitutional violations of subordinates if the supervisor participated in or directed the violation, or knew of the violations and failed to act to prevent them." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) (internal quotation marks omitted). The complaint adequately alleges the personal involvement of the supervisors in the unconstitutional patrols. Specifically, it alleges that the defendants "personally reviewed and thus, knowingly ordered, directed, sanctioned or permitted the roving patrol[s]." The complaint also alleges that the unconstitutional patrols were exacerbated by a lack of reporting requirements, and that the Chavezes complained to Hunt, Obregon, Chavez, and Campbell about the allegedly unlawful stops. Furthermore, the complaint alleges that Aguilar knew of the roving patrols and deliberately sanctioned them.
>
> An unconstitutional policy and practice can be inferred from the complaint's description of directed and repeated roving patrols, the allegation that the supervisors sanctioned them, and the allegation that the agents had supervisory authority.

*Chavez v. United States of America*, No. 05-15458, 2007 WL 901238 (9th Cir. March 27, 2007).

## III. Legal Standards

### A. Motion for Judgment on the Pleadings Standard

The standard applied on a Rule 12(c) motion for judgment on the pleadings is essentially the same as that applied to Rule 12(b)(6) motions. Judgment on the pleadings is appropriate when, even if all material facts in the complaint are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, all inferences reasonably drawn from the facts alleged in the complaint must be construed against the moving party. *Id.*

## IV. Discussion

In their motion, the Individual Supervisory Defendants, while recognizing that the Ninth Circuit previously found that the Plaintiffs had adequately stated their supervisory claims, assert that Supreme Court's *Iqbal* decision, which was issued after the Ninth Circuit's review of this case, compels the dismissal of the claims of supervisory liability. Defendants specifically allege that Plaintiffs have failed to plead individual actions which violated the Plaintiffs' constitutional rights. The Plaintiffs' allegations, Defendants contend, are conclusory and thus inadequate under Rule 8 of the Federal Rules of Civil Procedure.

In response, Plaintiffs contend that *Iqbal* did little to change the standards applied to motions to dismiss filed in the Ninth Circuit. They contend that the allegations against the Individual Supervisory Defendants satisfy the requirements of Rule 8. Plaintiffs further contend that this case is factually distinct from *Iqbal* and that they have alleged personal involvement of the Defendants sufficient to state a claim.

Federal Rule of Civil Procedure 8(a)(2) requires

> "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" . . . While a complaint attached by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . ., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a

3

> cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . .

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

In *Twombly,* the Supreme Court held that a claim may be dismissed pursuant to Rule 12(b)(6) if the plaintiff fails to articulate "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. In *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court further refined the plausibility standard for evaluating the factual sufficiency of a civil rights complaint. In *Iqbal*, the plaintiff, a Pakistani Muslim man, was arrested and detained shortly after the attacks of September 11, 2001. 129 S.Ct. at 1942. He alleged that the former United States Attorney General, John Ashcroft, was the "principal architect" of a policy that subjected him and other Arab Muslims to "harsh conditions of confinement on account of his race, religion, or national origin, in violation of the U.S. Constitution," and that the Director of the FBI, Robert Mueller, was "'instrumental' in adopting and executing" the policy. *Id*. at 1951. In relation to Ashcroft and Mueller, the Supreme Court determined that the complaint failed "to plead sufficient facts to state a claim for purposeful and unlawful discrimination . . . ." *Id*. at 1954.

In reaching this conclusion, the Court first explained that "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," are not entitled to an assumption of truth. *Id*. at 1951 (quoting *Twombly*, 550 U.S. at 555). After disregarding the conlcusory allegations, the Court examined the plausibility of the remaining allegations, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id*. at 1949. Applying this standard to the facts alleged by Iqbal, the Court concluded that the asserted facts could establish a discriminatory intent, but also could support a non-discriminatory scenario which incidentally had a disparate impact on Arab Muslims. *Id*. at 1951. The court examined the

alternative interpretations and concluded that a finding of plausibility required the Court to infer "purposeful, invidious discrimination . . . ." *Id.* at 1951-52. The Court determined that the inference was unwarranted and the allegations were therefore implausible. *Id.* at 1952.

The Ninth Circuit, in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009), the Ninth Circuit applied the *Twombly/Iqbal* standard, which it summarized as follows:

> "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).
>
> In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

*Moss*, 572 F.3d at 969. With these standards in mind, the Court addresses the Defendants' motion.

The Individual Supervisory Defendants's argument begins with the undisputed premise that supervisory governmental employees may not be held liable under a *respondeat superior* theory for the unconstitutional conduct of their subordinates. *See, e.g., Monell v. New York Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court has also rejected the notion that a supervisor can be subject to liability based on mere knowledge of his subordinate's discriminatory action. *Iqbal*, 129 S.Ct. at 1949. The Supervisory Defendants here contend that the Plaintiffs' allegation that "Defendants Hunt, Obregon, Chavez, Campbell, Aguilar, and Ziglar personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted the roving patrol activities and operations . . .," amounts to mere knowledge and is therefore insufficient under *Iqbal* to sustain the claims against the supervisors.

5

As to Defendant Hunt, there is no question that Plaintiffs have sustained their burden. In the Amended Complaint, Hunt's alleged participation in the stops of the Chavez Shuttle goes well beyond that required by *Iqbal*. The Chavezes allege that Hunt stopped the shuttle without reason and at one time confiscated the shuttle van. FAC, ¶¶ 77-83. They also allege that they complained to Hunt about the frequent and unfounded stops of the shuttles, but nothing was done. These allegations go well beyond those found to be inadequate in *Iqbal*. Here, in their claims against Hunt, Plaintiffs have offered facts, which if true, are plausibly suggestive that they were targeted and stopped based on no legitimate reason. As such, they have sufficiently alleged a plausible claim for relief against Hunt.

The call is much closer in relation to Defendants Ziglar, Aguilar, Obregon, Chavez and Campbell. In sustaining Plaintiffs' claims against these Defendants, the Ninth Circuit noted that the Plaintiffs alleged that the Defendants "personally reviewed and thus, knowingly ordered, directed, sanctioned or permitted the roving patrol[s]." *Chavez v. United States of America*, No. 05-15458, 2007 WL 901238. These allegations are strikingly similar to those alleged by Iqbal against Attorney General Ashcroft and FBI Director Mueller. In fact, Iqbal went so far as to allege that Ashcroft was the "principal architect" of the allegedly unconstitutional policy at issue and the Court nevertheless dismissed the claims. *Iqbal*, 129 S.Ct. at 1951. However, a significant consideration relied upon by the Court was that the facts alleged by Iqbal could be read to support a non-discriminatory scenario in which a legitimate policy had a "disparate, incidental impact on Arab Muslims." *Id*. Such a non-discriminatory scenario is not readily apparent here.

As also noted by the Ninth Circuit, the complaint alleges that the "unconstitutional patrols were exacerbated by a lack of reporting requirements, and that the Chavezes complained to Hunt, Obregon, Chavez, and Campbell about the allegedly unlawful stops . . . ," and that "Aguilar knew of the roving patrols and deliberately sanctioned them." *Chavez v. United States of America*, No. 05-15458, 2007 WL 901238. Turning to the specific allegations contained in the complaint, the Chavezes additionally allege that the policy of

6

roving patrols employed by the Defendants "do not entail vehicle stops based on actual information, specific to individual, targeted vehicles or their occupants," *FAC*, ¶ 91, but instead rely on "predetermined criteria and composites of such criteria, or so-called profiles, in picking out the vehicles they will follow and stop." *FAC*, ¶ 93. "Foremost among those criteria is the Latin, Hispanic or Mexican appearance of drivers and/or other occupants of vehicles." *FAC*, ¶ 94. Plaintiffs also allege that agents are not required to file reports or maintain or preserve logs in relation to these stops unless contraband or aliens are found. *FAC,* ¶¶ 100-101. The practices described in the complaint are alleged to "not only deviate from agency routines in analogous circumstances, but constitute deliberate patterns and practices, designed to conceal or obfuscate nonconsensual searches for which another, sufficient legal predicate did not exist, or to avoid regular, reliable documentation of such additional incidents of roving patrol operations . . . ." *FAC*, ¶ 102. Unlike those alleged in *Iqbal*, these facts, coupled with those specifically cited by the Ninth Circuit, do not offer an "obvious alternative explanation" for the stops of the shuttle, and it would be a stretch for the Court to find a plausible non-discriminatory reason for the policies allegedly sanctioned by the Individual Supervisory Defendants.

In *Iqbal*, the Supreme Court reiterated that a supervisory government defendant "cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic." *Iqbal*, 129 S.Ct. at 1949. Consistent with this rule, the Ninth Circuit requires that a plaintiff identify the role, if any, each defendant had in violating a plaintiff's constitutional rights. *Wong v. INS*, 373 F.3d 952, 966 (9th Cir. 2004). While the Chavezes complaint does not allege that all of the Individual Supervisory Defendants were directly involved in the decision to stop the shuttle, "direct, personal participation is not necessary to establish liability for a constitutional violation." *Id*. Supervisors can be held liable for the actions of their subordinates (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction

7

in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (internal quotation marks omitted). *Iqbal* does not undermine these potential bases for liability, it does though demand that a plaintiff plead a claim that has facial plausibility. As the Ninth Circuit previously determined, Plaintiffs have satisfied that requirement here.

**V.      Recommendation**

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an Order **denying** the Individual Supervisory Defendants' Motion for Judgment on the Pleadings [Doc. No. 143].

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 01-245-TUC-FRZ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 17th day of June, 2010.

_Jacqueline Marshall_
Jacqueline Marshall
United States Magistrate Judge