1
2
3
4
5
6

## IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8

9  | Jose Chavez, et al.,

10 |                    Plaintiffs,

11 | v.

12 | United States of America, et al.,

13 |                    Defendants.

No. CV-01-00245-TUC-FRZ

**ORDER**

14      Pending before the Court is the Report and Recommendation [Doc. 266] issued by

15  United States Magistrate Judge Rateau that recommends the Court deny Defendant

16  Hunt's Motion for Summary Judgment [Doc. 235] and grant Defendants Demik, Rios,

17  and Scharnweber's Motion for Summary Judgment [Doc. 238].  The Court has conducted

18  an independent review of the record, including review of Defendant Scharnweber's

19  Partial Objections to Summary Judgment Report and Recommendation [Doc. 269],

20  Objection to Report and Reccomendation (*sic*) to Deny Summary Judgment for

21  Defendant Hunt [Doc. 271], Plaintiffs' Objections to Magistrate's Report and

22  Recommendations (*sic*) [Doc. 272], Defendant Rios, Scharnweber, and Demik's

23  Objections to the Report and Recommendation [Doc. 273], Plaintiffs' Response to

24  Defendant Scharnweber's Partial Objections to Summary Judgment Report and

25  Recommendation [Doc. 274], and Plaintiffs' Response to Defendant Hunt's Objection to

26  Report and Recommendation to Deny Summary Judgment for Defendant Hunt [Doc.

27  275]. As more fully set forth herein, the Court will **adopt** in part and **reject** in part the

28

recommendations of Magistrate Judge Rateau.[1]

**Procedural Background**[2]

Plaintiffs Jose and Maria Chavez initiated this case on May 25, 2001. Their First Amended Complaint [Doc. 12] ("FAC") was filed on January 7, 2002. The FAC named as defendants the United States of America, the United States Immigration and Naturalization Service Commissioner James Ziglar, United States Border Patrol Sector Chief David Aguilar, and fifteen current and former Border Patrol agents. The FAC alleges: (1) assault; (2) battery; (3) false imprisonment/false arrest; (4) intentional infliction of emotional distress; (5) negligence; and (6) constitutional violations (monetary, declaratory, and injunctive relief). *Id.*

Defendants filed motions to dismiss or in the alternative motions for summary judgment seeking to dispose of the entire case. At the same time Plaintiffs filed their responsive briefs opposing dismissal, Plaintiffs filed their Rule 56(f) motion seeking deferment of any ruling on the alternative motion for summary judgment as Plaintiffs had not had any opportunity to conduct discovery. In 2002, the Honorable David C. Bury (who presided over the case at the time) ordered nearly all of the substantive claims dismissed whereby only a minor property damage claim remained. As the motion to dismiss was granted, the Rule 56(f) motion was denied as moot as well as the alternative motion for summary judgment. Subsequently, Judge Bury recused himself from the case, the case was reassigned to Magistrate Judge Marshall, and the parties proceeded to a bench trial before Magistrate Judge Marshall in 2005. Magistrate Judge Marshall found

---

[1] This Court reviews de novo the objection-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 736 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

[2] This matter has been pending for 13 years and has been on appeal to the Ninth Circuit twice. The background is lengthy. Given that the current Report and Recommendation recommends granting summary judgment in favor of all but one of the Defendants (Defendant Hunt) thereby disposing of the entire case (except the Plaintiffs' claim as to Hunt), a detailed history of the case is set forth. Some of the background is taken from this Court's order of September 30, 2008 [Doc. 118] and from the pending Report and Recommendation [Doc. 266].

1   in favor of Plaintiffs in the amount of $3,700.00. Thereafter, Plaintiffs appealed Judge

2   Bury's previous dismissal order.

3   _Chavez I_

4          On March 27, 2007, the Ninth Circuit issued an order affirming in part and

5   reversing in part Judge Bury's decision and remanding for further proceedings.  *See*

6   *Chavez v. U.S.*, 226 Fed. Appx. 732 (9th Cir. 2007) (hereinafter, *Chavez I*).  The Ninth

7   Circuit reversed the dismissal of Plaintiffs' *Bivens* claims as to Agents Rios, Demik[3],

8   Scharnweber, Hunt, Obregon, Chavez, Campbell, Ziglar and Aguilar, and reinstated

9   Plaintiffs' claims for equitable relief under the Fourth Amendment. The Ninth Circuit

10  found that the dismissal of these claims pursuant to Rule 12(b)(6) for failure to state a

11  claim was erroneous and also found that the previous denial of the Rule 56(f) motion and

12  motion for summary judgment as moot was also error.  The Ninth Circuit held, *inter alia*,

13          We disagree, however, with the district court's finding that the Chavezes
14      have failed to satisfy the notice pleading requirement with respect to the
        remaining defendants. First, the Chavezes bring claims against Agents,
15      Rios, Demek, (*sic*) and Scharnweber. Unlike the vague and conclusory
        allegations regarding the other defendants discussed *supra*, the complaint
16      alleged that Rios, Demek, (*sic*) and Scharnweber each stopped the shuttle
        on a specific occasion. Those allegations, coupled with the allegation that
17      "[i]ndividual Defendants['] lacked consent, probably cause, and reasonable
18      suspicion, and warrants," are sufficient to provide notice of the claims
        against Agents Rios, Demek, (*sic*) and Scharnweber.
19

20  Thus, the Ninth Circuit remanded the case to the District Court for its consideration of the

21  Rule 56(f) and summary judgment motions.

22          After remand to the District Court, the United States Supreme Court decided

23  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In light of

24  *Iqbal*, the supervisory Defendants filed a motion for judgment on the pleadings under

25  Rule 12(c).   This Court denied the motion to dismiss, finding that the supervisory

26  _____

27          [3] Defendant Demik's name is spelled differently throughout the case.  *Compare*,
    *Chavez v. U.S.*, 682 F.3d 1102 (9th Cir. 2012) (Demek), *with* Doc. 272 (using both Demek
28  and Demik), *with* Doc. 238 (Demik). The Court will use the spelling "Demik" as that is
    the spelling used by Defendant Demik's counsel. *See* Doc. 238.

1   defendants failed to provide a plausible nondiscriminatory explanation for the alleged

2   stops.  This Court also held that Plaintiffs did not need to allege that the supervisory

3   defendants directly participated in constitutional violations. *Id*. Instead, relying upon

4   *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), this Court held Plaintiffs

5   had plausibly alleged that the supervisory defendants had either knowingly refused to

6   terminate a series of acts they reasonably should have known would cause constitutional

7   violations, acquiesced in constitutional deprivations by subordinates, or displayed

8   reckless or callous indifference to others' rights.  The supervisory defendants appealed.

9   *Chavez II*

10        On the supervisory defendants' appeal, the Ninth Circuit held, *inter alia*, "taking

11   qualified immunity into account, a supervisor faces liability under the Fourth Amendment

12   only where 'it would be clear to a reasonable supervisor that his conduct was unlawful in

13   the situation he confronted.'" *Chavez v. United States,* 683 F.3d 1102, 1110 (9th Cir.

14   2012) (hereinafter, *Chavez II*). Under this standard, the Ninth Circuit held Plaintiffs' FAC

15   failed to state a Fourth Amendment claim against any supervisory defendant except as to

16   Defendant Hunt. *Id*. The Ninth Circuit further held that, in contrast to the other

17   supervisory defendants, Hunt faces liability not only as a supervisor, but also for his

18   direct participation in the stops. *Id*. at 1111.  The Fourth Amendment prohibits an officer

19   on roving patrol near the border from stopping a vehicle in the absence of an objectively

20   "reasonable suspicion" that the "particular vehicle may contain aliens who are illegally in

21   the country" or is involved in some other criminal conduct.  *Id*., *quoting United States v.*

22   *Brignoni-Ponce*, 422 U.S.  873, 881, 95 S.Ct. 275, 45 L.Ed.2d 607 (1975).

23        The Ninth Circuit held that the facts alleged in the FAC did not indicate that, when

24   Hunt made the two stops, any observable characteristics other than race could have

25   provided a basis for reasonable suspicion. *Chavez II*, 683 F.3d at 1112, *citing Brignoni-*

26   *Ponce*, 422 U.S. at 886, 95 S.Ct. 2574 ("At best the officers had only a fleeting glimpse

27   of the persons in the moving car…"). Indeed, although the supervisory defendants argue

28   that Hunt's knowledge that Plaintiffs' shuttle had carried undocumented passengers on

    previous occasions would have supported reasonable suspicion, the FAC indicates that,

on one of the two occasions when Hunt stopped Plaintiffs, Plaintiffs drove a rental van because their usual shuttle was under repair. *Chavez II*, 683 F.3d at 1112. Based upon the facts set forth in the FAC, Plaintiffs have plausibly alleged that Hunt stopped them based solely on their and their passengers' "apparent Mexican ancestry," a characteristic that a reasonable officer clearly would have known did not create reasonable suspicion. *Id.* Accordingly, the Ninth Circuit held the FAC adequately states a claim against Defendant Hunt for Fourth Amendment violations, and, at least on the facts alleged, qualified immunity does not shield Hunt from liability. *Id.*

*Post-Chavez II*

The mandate in *Chavez II* was issued on August 15, 2012. Thereafter, the parties engaged in discovery relating to what was left of the allegations contained in Plaintiffs' FAC. On August 3, 2013, Defendants Scharnweber, Demik, and Rios filed a motion to amend their answer to add the defense of the statute of limitations. This Court entered an Order granting Defendants' motion by adopting the conclusion of Magistrate Judge Rateau's Report and Recommendation. On September 1, 2013, Defendant Hunt filed his Motion for Summary Judgment. On that same date, Defendants Scharnweber, Rios and Demik filed their Motion for Summary Judgment.

It is against this lengthy backdrop that the Court considers the current Report and Recommendation [Doc. 266] regarding the disposition of Defendants Hunt, Scharnweber, Rios, and Demik's motions for summary judgment.

**The Pending Report and Recommendation**

The Chavez Shuttle

Plaintiffs Jose and Maria Chavez operated a shuttle (the "Chavez Shuttle") between Tucson and Sasabe, Arizona between the years 1998 and 2003. The Chavez Shuttle was usually driven by Plaintiff Jose Chavez although Maria Chavez would drive the Chavez Shuttle on an emergency basis. Initially, the Chavez Shuttle made three (3) daily trips between Tucson and Sasabe but later reduced the number of trips to two (2). Passengers were picked up by the Chavez Shuttle in Sasabe near the port of entry and at the general store.

During the time Plaintiffs operated the Chavez Shuttle there were approximately 100 residents in Sasabe.  There are approximately 10 pedestrian and 80 to 100 vehicle legal crossings per day from Mexico unto the United States at the Sasabe port of entry. Most of those crossing were thought to be bound for Tucson. During that time, the Chavez Shuttle was stopped by Border Patrol agents on almost a daily basis.  Plaintiff Jose Chavez agrees with Border Patrol estimates that approximately 80 persons were removed from the Chavez Shuttle as undocumented aliens over a four year span.

The Border Patrol Stops of the Chavez Shuttle

The remaining claims in the case arise out of five (5) border patrol stops of the Chavez Shuttle. The stops are as follows. First stop: Defendant Rios is alleged to have threatened to strike Plaintiff Jose Chavez. Second stop: On or about January 5, 1999, Defendant Scharnweber is alleged to have stopped the Chavez Shuttle while it was driven by Plaintiff Marie Chavez and removed six (6) undocumented passengers. Third stop: On August 24, 2000, Defendant Hunt is alleged to have stopped the Chavez Shuttle being driven by Plaintiff Jose Chavez and removed the keys from the van.  Fourth stop: In the winter of 2000-2001 Defendant Hunt is alleged to have stopped the Chavez Shuttle as it was driven by Plaintiff Jose Chavez and told him (Jose Chavez) that he was under arrest. Fifth stop: On March 6, 2001, Defendant Demik is alleged to have stopped Plaintiff Jose Chavez and taken pictures of the Chavez Shuttle. The issues arising out of each of these stops are taken in turn below.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, and cannot make credibility determinations or perform any

1
2

weighing of the evidence. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

3
4
5
6
7
8

**<u>Defendant Rios (First Stop):</u>** Defendant Rios was a Border Patrol agent from 1993 until 1998 and was a Border Patrol supervisor from 1998 until 2001. Plaintiff Jose Chavez does not recall the date that he was stopped by Defendant Rios.  Defendant Rios cannot recall any specific encounter with Plaintiffs or anything that may have happened during an encounter.  The sole record of a stop of the Chavez Shuttle initiated by Defendant Rios establishes the date of the stop as being September 8, 1997.

9
10
11
12
13
14
15
16
17
18
19

Defendant Rios moved for entry of judgment in his favor on two grounds: (1) qualified immunity and (2) statute of limitations. Magistrate Judge Rateau recommends granting judgment in favor of Defendant Rios on statute of limitations grounds. In the alternative, Magistrate Judge Rateau recommends granting judgment in Defendant Rios's favor on qualified immunity grounds. Magistrate Judge Rateau also concludes that, "Plaintiffs have not expressly alleged that Rios was involved in an illegal <u>stop</u> (as opposed to the activities that alleged occurred after the stop). (Emphasis added.) Because of this conclusion, Magistrate Judge Rateau did not analyze whether Defendant Rios's stop of the Chavez Shuttle complied with the Fourth Amendment.[4] As explained below, the Court will adopt the recommendation of Magistrate Judge Rateau that the claims against Defendant Rios are time barred.

20

*Statute of Limitations*

21

The applicable statute of limitations for Plaintiffs' *Bivens*[5] claims is the two year

22
23
24
25
26

[4] Plaintiffs have lodged an objection to the Magistrate Judge's "cursory elimination of the Fourth Amendment claims based on the illegality of the stops themselves." Doc. 272 at p. 2, ll. 13-14. The Court agrees with Plaintiffs that the mandate of the Ninth Circuit in *Chavez I* largely compels the conclusion that Plaintiffs pled a claim against Defendants Rios and Demik for their respective stops of the Chavez Shuttle. However, since the Court concludes that Plaintiffs claims against Defendant Rios are time barred, any Fourth Amendment issue arising out of the stop initiated by Defendant Rios is moot.

27
28

[5] Plaintiffs' claims arise under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-95 (1971).  The basis of a *Bivens* action is some illegal or inappropriate conduct on the part of a federal officer or agent that violates a clearly established constitutional right. *Balser v. Department of Justice, Office of the*

period provided by Ariz. Rev. Stat. § 12-542(1). Border Patrol records that are not in dispute establish that Defendant Rios stopped the Chavez Shuttle on September 8, 1997, and discovered undocumented aliens. However, Plaintiff Jose Chavez does not recall whether the alleged threat by Defendant Rios occurred at this stop in 1997. Complicating matters for Plaintiffs Chavez is the fact that the Tucson sector of the Border Patrol does not keep records of stops where no illegal immigrants are located. Attempting to turn this complication into a benefit, Plaintiffs Chavez argue that they have put forth enough evidence to survive summary judgment because Plaintiffs Chavez assert that Defendant Rios *could* have stopped the Chavez Shuttle after September 8, 1997, since not every stop is documented.

However, once the defendant has established a *prima facie* case entitling him to summary judgment on a statute of limitations defense, the plaintiff has the burden of showing available, competent evidence that would justify a trial. *Logerquist v. Danforth*, 188 ARiz. 16, 19, 932 P.2d 281, 284 (App. 1996) (quoting *Ulibarri v. Gerstenberger*, 178 Ariz. 151, 156, 872 P.2d 698, 703 (App. 1993)).  Here, Defendant Rios has put forth a *prima facie* case that he initiated a stop of Plaintiff Jose Chavez driving the Chavez Shuttle on September 8, 1997. Indeed, this is the only Border Patrol record of Defendant Rios' stop of the Chavez Shuttle. Fatal to Plaintiffs' claim is the fact that Plaintiffs Chavez have not come forward with available, competent evidence from which a trier of fact could conclude that Defendant Rios' alleged threat occurred at a stop after September 8, 1997, and within the 2 year statute of limitations period preceding the filing of their Complaint.

Plaintiffs Chavez argue the decision in *Nicacio v. United States I.N.S.*, 979 F.2d 700, 706 (9th Cir. 1985), *overruled in part on other grounds by Nodgers-Durgin, v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999), supports their argument that they have met their burden to come forward with competent, admissible evidence demonstrating a genuine issue of fact for trial. The language relied upon by Plaintiffs Chavez from *Nicacio* was used by the Court of Appeals after a verdict to describe the district court's

*United States Trustee*, 327 F.3d 903, 909 (9th Cir. 2003).

"careful credibility findings" at trial. 979 F.2d at 706. Here, the Court is faced with a different situation in that Plaintiff Jose Chavez cannot even recall that the alleged Rios stop took place at a time within the statute of limitation.

For the foregoing reasons, the Court will adopt the conclusion of Magistrate Judge Rateau that Plaintiffs' claims against Defendant Rios are time barred.

**Defendant Scharnweber (Second Stop):**  On January 5, 1999, Defendant Scharnweber stopped the Chavez Shuttle as it was being driven by Maria Chavez. Defendant Scharnweber initiated the stop based on his observation that it was carrying passengers from Sasabe and had previously been found to be carrying aliens.  After making the stop, Defendant Scharnweber opened the van door and demanded documentation from the passengers. All seven passengers on the Chavez Shuttle at the time were determined to lack documentation. Defendant Scharnweber seized the Shuttle, arrested Maria Chavez on suspicion of alien smuggling and transported her and the undocumented aliens to the Tucson Border Patrol station.

Magistrate Judge Rateau recommends dismissing the claim against Defendant Scharnweber on statute of limitations grounds. Just as with Defendant Rios, the applicable statute of limitations for Plaintiffs' *Bivens* claims is two years. Plaintiffs alleged that Defendant Scharnweber stopped the Chavez Shuttle on January 5, 1999.  As set forth above, Plaintiffs filed their Complaint in May of 2001 and their FAC on January 7, 2002.

The Court will adopt the recommendation of the Magistrate Judge that the claim against Defendant Scharnweber be dismissed as time barred.

**Defendant Hunt (Third and Fourth Stops):**  *The August 24, 2000, stop by Defendant Hunt:* Around 9:00 p.m. on August 24, 2000, Defendant Hunt was observing traffic on Route 286 about 11 miles north of the border.  Defendant Hunt saw a van occupied by only the driver heading south. About twenty minutes after he initially saw the van heading south, Defendant Hunt saw it heading north with two (2) passengers inside. Defendant Hunt then pulled the vehicle over. As Defendant Hunt approached the van he saw the van was being driven by Plaintiff Jose Chavez and that the passengers had

muddy shoes and pants.  Defendant Hunt then decided to seize the van. *The 00/01 Winter stop by Defendant Hunt*: Defendant Hunt recalls the stop occurred at night, was very close to Sasabe, was after the port of entry had been closed for some time, and that Plaintiff Jose Chavez was driving the shuttle.

Magistrate Judge Rateau recommends that the Court deny Defendant Hunt's request for judgment in his favor as a matter of law that the two stops he conducted violated the Plaintiffs' Fourth Amendment rights and that he is entitled to qualified immunity. Defendant Hunt objects to the conclusion reached by Magistrate Judge Rateau that he did not have reasonable suspicion that criminal activity was afoot when he made the August 24, 2000, stop and the 00/01 Winter stop. Defendant Hunt argues that the Magistrate Judge erred in not considering the stops through his lens of extensive Border Patrol experience (11 years).  Defendant Hunt also argues that the Magistrate Judge did not give enough weight to the location and surrounding area of the stops in reaching her conclusion that he (Defendant Hunt) did not have reasonable suspicion to support the two stops. Plaintiffs Chavez assert that the Magistrate Judge reached the correct conclusion and point out that in the cases cited by Defendant Hunt, each court (in its own way), cautioned that innocent activity occurs in a high crime area and the area of the stop itself provides no basis for converting innocuous conduct into suspicious conduct. *See United States v. Mallides*, 473 F.2d 859, 861 n. 3 (9th Cir. 1973).[6] Plaintiffs also point out that while the Court is to consider officer experience, with respect to the August 24, 2000 stop, Defendant Hunt did not even know he was stopping the Chavez shuttle at the time he made the stop so Defendant Hunt could not possibly have relied upon his knowledge of the history of the Chavez Shuttle as part of the basis for the stop.  As explained below, the Court will adopt the recommendation of Magistrate Judge Rateau.

---

[6] *See also, United States v. Diaz-Juarez*, 299 F.3d 1138 (9th Cir. 2002) (Presence in a high-crime area cannot alone provide reasonable suspicion that he had committed or was about to commit a crime.); *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (We note initially that an individual's presence in a high crime area is not enough to support reasonable, particularized suspicion that the individual in question has committed or is about to commit a crime.)

*Standards for Stops*

Officers enforcing the immigration laws must comply with the Fourth Amendment. An investigatory stop is lawful if an officer "reasonably suspects that the person apprehended is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). Stopping a vehicle is usually analogous to a so-called '*Terry* stop' and officers ordinarily may stop a vehicle based on reasonable suspicion of criminal activity. *Berkmer v. McCarty*, 465 U.S. 420, 439 (1984). Such a stop is permitted where officers are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the county." *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975).

Reasonable suspicion for a federal officer to stop a car to investigate the immigration status of the occupants depends upon the "totality of the circumstances." *U.S. v. Arviz*u, 534 U.S. 266, 277 (2002). In considering the totality of the circumstances, however, "an officer cannot rely solely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." *U.S. v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006). Hispanic appearance, for example, is "of such little probative value that it may not be considered as a relevant factor where particularized or individualized suspicion is required." *U.S. v. Montero-Camargo*, 208 F.3d 1122, 1135 (9th Cir. 2000). Moreover, while an inability to speak English is probative of immigration status, it does not supply reasonable suspicion unless "other factors suggest that the individuals are present in this country illegally." *Manzo-Jurado*, 457 F.3d at 937.

The undisputed facts surrounding Defendant Hunt's August 24, 2000, stop and his 00/01 Winter stop of the Chavez Shuttle establish that there was little more than the presence of the Chavez Shuttle in an area close to the border at a time when the border had already closed in support of the argument that Defendant Hunt had reasonable suspicion to stop the Chavez Shuttle. Case law is clear that mere presence in a high crime area, without more, will not support a finding of reasonable suspicion. *See, e.g., Montero-Camargo*, 208 F.3d at 1138 (an individual's presence in a high crime area is not enough

to support reasonable, particularized suspicion that the individual in question has committed or is about to commit a crime); *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (holding that an investigatory stop was not justified when police officers detained two men walking away from each other in an alley in an area with a high rate of drug trafficking because "the appellant's activity was no different from the activity of other pedestrians in that neighborhood").  Moreover, although Defendant Hunt urges this Court to conclude that he had reasonable suspicion to support his two stops in light of his 11 years of experience, experience does not itself serve as an independent factor in the reasonable suspicion analysis. *Montero-Camargo*, 208 F.3d at 1131-32. While Defendant Hunt seeks to have the Court agree with him that his prior experience with the Chavez Shuttle supports a reasonable suspicion finding, with respect to the August 24, 2000 stop, Defendant Hunt did not even know he was stopping the Chavez Shuttle when he initially pulled it over.

Accordingly, the Court cannot say, as a matter of law, that the stops initiated by Defendant Hunt were supported by reasonable suspicion.

*Qualified Immunity – Defendant Hunt*

To determine whether a government official sued in his individual capacity is entitled to qualified immunity, a court must first determine whether, when considered in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2002). If a constitutional violation occurred, the court must determine whether the right was clearly established at the time of the alleged violation. *Id*. If the law did not put the defendant on notice that her conduct would be clearly unlawful, summary judgment based upon qualified immunity is appropriate.  *Id*. at 202.

The first *Saucier* prong has already been analyzed and the Court concludes that Defendant Hunt has not established that as a matter of law he had reasonable suspicion to stop the Chavez Shuttle. The second *Saucier* prong, whether the case law establishes that Defendant Hunt should have been aware that his conduct was unlawful, is also satisfied. As of 2000, the law that mere presence in a high crime area is not sufficient, in and of

itself, to establish reasonable suspicion was well established. *See, e.g., Montero-Camargo*, 208 F.3d at 1138 (holding, in 2000, that an individual's presence in a high crime area is not enough to support reasonable, particularized suspicion that the individual in question has committed or is about to commit a crime); *Brown v. Texas,* 443 U.S. at 52 (holding, in 1979, that an investigatory stop was not justified when police officers detained two men walking away from each other in an alley in an area with a high rate of drug trafficking because "the appellant's activity was no different from the activity of other pedestrians in that neighborhood").

The Court will adopt the recommendation of Magistrate Judge Rateau that Defendant Hunt is not entitled to entry of judgment in his favor as a matter of law that: (1) he had reasonable suspicion to support the stops of Plaintiff Jose Chavez and (2) he is entitled to qualified immunity.

**Defendant Demik (Fifth Stop):** Plaintiffs assert that on March 6, 2001, Defendant Demik stopped the Chavez Shuttle as it was being driven by Plaintiff Jose Chavez. Defendant Demik is alleged to have taken pictures of the Chavez Shuttle during this stop. The Magistrate Judge recommends granting judgment in Defendant Demik's favor on the grounds that Plaintiffs Chavez have failed in their burden to establish that Defendant Demik's conduct was sufficiently egregious to rise to the level of a Fourth Amendment violation. Also, just as with Defendant Rios,[7] the Magistrate Judge concluded that Plaintiffs Chavez did not adequately plead a claim against Defendant Demik based on the stop itself (as opposed to conduct that occurred during the stop). Plaintiffs Chavez objected to this conclusion.  Defendant Demik has asserted three arguments in support of his position that the Magistrate Judge correctly concluded that Plaintiffs Chavez did not state a claim against him for his stop of the Chavez Shuttle,  namely: (1) in his deposition testimony Plaintiff Jose Chavez said he was not challenging the stop by Defendant Demik; (2) the mandate in *Chavez I* was issued prior to *Ashcroft v. Iqbal* and no longer relevant; and (3) even if Plaintiffs had sufficiently stated a Fourth Amendment claim

---

[7] (*see* n.3, *supra*)

against Defendant Demik, Plaintiffs have failed to demonstrate a genuine issue of material fact for trial.

The Court does not agree with the conclusion that Plaintiffs have not sufficiently stated a claim against Defendant Demik for his stop of the Chavez Shuttle on March 6, 2001. However, the Court will adopt the recommendation by Magistrate Judge Rateau that Defendant Demik is entitled to qualified immunity for his alleged conduct during the March 6, 2001, stop.

*The Claim Against Defendant Demik for His Stop of the Chavez Shuttle*

The allegations in the Plaintiffs' FAC against Defendant Demik expressly state, in relevant part, "On March 6, 2001, Plaintiff Jose Chavez was <u>stopped</u> by Defendant Demek (*sic*) during a regularly scheduled run.  Defendant Demek (*sic*) took photographs of Plaintiffs' shuttle…" *See* Doc. 12 at ¶ 37. This express allegation in the FAC, coupled with the mandate from *Chavez I*, is sufficient to support the conclusion that Plaintiffs Chavez pled a claim against Defendant Demik for his stop of the Chavez Shuttle. Defendants Demik's citations to Plaintiff Jose Chavez's deposition testimony for his argument that Plaintiff Jose Chavez testified that he is not stating a claim based on Defendant Demik's stop of the Chavez Shuttle is not convincing.  Based upon a reading of Plaintiff Jose Chavez's testimony it is not clear that Plaintiff Jose Chavez understood the questioning by Defendants' counsel regarding the stop by Defendant Demik. *See* Doc. 248 at Ex. 2 at p. 71-72, ll. 16-14 (For instance, when asked whether he was challenging a stop, Plaintiff Jose Chavez testified, in part, "He's a Border Patrol and he has to make a stop). Accordingly, the Court concludes that Plaintiffs Chavez did plead a Fourth Amendment claim against Defendant Demik based upon his March 6, 2001, stop of the Chavez Shuttle.

In his summary judgment motion, Defendant Demik argues that he is entitled to qualified immunity for his alleged conduct during the March 6, 2001, stop and specifically stated, "[P]laintiffs do not allege that this specific stop by Defendant Demik violated the Fourth Amendment." The Court concludes otherwise and determines that Defendant Demik has not met his burden of establishing that he is entitled to entry of

judgment as a matter of law regarding whether his stop of the Chavez Shuttle violated Plaintiff Jose Chavez's Fourth Amendment rights and, if so, whether he is nevertheless protected by the doctrine of qualified immunity for his March 6, 2001, stop of the Chavez Shuttle.

*Qualified Immunity – Defendant Demik*

Assuming the allegation that Defendant Demik photographed the Chavez Shuttle during the March 6, 2001, stop of the Chavez Shuttle to be true, the Magistrate Judge concluded that such conduct by Defendant Demik does not rise to the level of a constitutional violation. The Magistrate Judge reasoned that, "[w]hen viewed as a discreet event, there is no authority suggesting that the photographing of a vehicle in a public place could amount to a constitutional violation." *See Dow Chemical Company v. United States,* 476 U.S. 22 (1986) (taking aerial photographs of an industrial plan complex from navigable airspace is not a search prohibited by the Fourth Amendment). Therefore, the Magistrate Judge recommends granting Defendant Demik's request for qualified immunity for this alleged action. Plaintiffs offer no argument that the Magistrate Judge's conclusion is incorrect and the Court concludes that the Magistrate Judge's conclusion is, in fact, correct.

The Court adopts the recommendation by the Magistrate Judge with respect to Defendant Demik's alleged conduct during the March 6, 2001, stop.

**Conclusion**

IT IS HEREBY ORDERED:

1. Summary judgment in favor of Defendants Rios and Scharnweber is granted.

2. Summary judgment in favor of Defendant Hunt is denied.

…

…

…

…

…

…

3. Summary judgment in favor of Defendant Demik is granted with respect to Defendant Demik's conduct during the March 6, 2001, stop and summary judgment is denied with respect to Defendant Demik's stop of the Chavez Shuttle on March 6, 2001.

Dated this 3rd day of September 2014.

Frank R. Zapata
**Senior United States District Judge**